UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Crim. No. 7-42-B-W |
| | ) |
| LEONARD FRANCIS GIROUX, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDED DECISION**

Leonard Giroux, who is charged with possession of ammunition by a person previously convicted of a felony, has filed a motion to suppress statements he made to Probation Officer Corey Day prior to the time of his arrest on September 26, 2006. Giroux claims those statements were obtained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution.[1] I now recommend the Court adopt the following proposed findings of fact and deny the motion to suppress.

**Proposed Findings of Fact**

Martin Magnusson, a State of Maine Probation and Parole Officer since August 2005, was assigned duties including the supervision of Leonard Giroux, who was on state probation for burglary to a motor vehicle and forgery as a result of convictions in State of Maine Superior Court, Penobscot County, docket number CR 2004-860, on or about February 11, 2005. Giroux had been sentenced to 3 years, all but 1 year suspended, and 2 years probation. P.O. Magnusson had meetings with Giroux between December 2005 and May 20, 2006. Magnusson felt the probation went well during the first part of the

---

[1] Although Giroux makes reference in paragraph two of his motion to suppress to a claimed Fourth Amendment violation, no argument is made based upon the Fourth Amendment and the motion does not seek to suppress the physical evidence seized from Giroux's residence.

probationary period. During one of these meetings, Giroux told P.O. Magnusson that he (Giroux) had some archery equipment and a can of ammunition. Officer Magnusson told Giroux that Giroux could not possess these items and Officer Magnusson told Giroux to discard them. Giroux stated he would do so. Magnusson knew Giroux was seeing a counselor but did not know the nature of Giroux's psychological problems other than substance abuse problems. He knew that Giroux was taking a long list of medications including anti-depressants. He also knew Julie Richardson, one of Giroux's co-defendants in another case, had moved in with Giroux. There were no probationary conditions forbidding contact between the two of them and Magnusson knew little of Giroux's background. Magnusson did not know the details of Giroux's activities in Massachusetts nor anything of his criminal activities there.

At one point in his supervision of Giroux, Magnusson gave Giroux a written warning because there was drug paraphernalia in Giroux's house. In May of 2006 Giroux stopped reporting. According to Magnusson, Giroux had failed to abide by his state probation conditions and failed to report as scheduled to Maine Probation and Parole, and a State of Maine probation violation arrest warrant was sought by Magnusson on September 7, 2006, based on Giroux's failure to report and changing address without notification. The warrant was obtained prior to September 18, 2006. In his attempts to find Defendant Giroux, Officer Magnusson tried on numerous dates to contact him by phone, mail and personal visits. During a visit sometime in August 2006, Officer Magnusson noticed a "For Sale by Owner" sign on Defendant's last known residence. Magnusson was concerned that Giroux was planning to leave the area. Additionally, the Piscataquis County Sheriff's Office was investigating Giroux as a suspect in the theft of

2

some firearms and had obtained a search warrant for the residence. Magnusson went with them in August 2006 to execute this warrant. Giroux was not at home at the time of the execution of the warrant. On September 24, 2006, an undercover call was placed to Defendant Giroux's number pretending interest in the real estate up for sale and a voice-mail message was left. On September 25, 2006, Defendant Giroux returned that call and arrangements were made to meet him on his property on September 26 at 10:00 a.m.

On September 26, 2006, Corey Day and another state probation officer, acting in an undercover capacity, met with Giroux at his residence in Corinth. The meeting was prearranged by voluntary phone message between Giroux and Day, who posed as someone interested in buying the hunting camp. Day and his companion presented themselves to Giroux as hunters who wanted to buy Giroux's property to open a guide business for hunters. Giroux told Day during this meeting that he liked to shoot in the yard, that his neighbors sometimes hear him shooting firearms and that he usually shoots 9mm cal. ammunition or .22 cal. ammunition. Day does not recall any other specific statements about hunting made by Giroux. Day made no statements offering to pay additional money for the property if Giroux would talk about guns or hunting nor did he have any specific knowledge about Giroux's mental state.

At the conclusion of the undercover meeting, the officers arrested Giroux for state probation violations on the outstanding probation violation arrest warrant. Day attempted to make the arrest as quickly as possible, but also wanted to make sure about the safety and security of the officers involved at the time of the arrest. Following Giroux's arrest, the officers prepared to search Giroux's residence for prohibited items, drugs and alcohol, as listed in his probation conditions. Prior to the search, Officer Magnusson asked

Giroux if he had any items in the house that were in violation of his probation conditions. Giroux stated he still had the ammunition can that he had previously reported. The officers searched Giroux's residence and found, in the loft above the kitchen, a military-style, metal ammunition can containing several boxes of ammunition. The can and ammunition were seized and form the basis for the instant federal indictment.

## Discussion

**A.     Sixth Amendment**

Giroux made the statements in question on September 26, 2006, shortly before he was arrested for violating his state probation. He claims the statements were obtained in violation of his Sixth Amendment right to counsel. He was not charged with the instant felon in possession of ammunition offense until a complaint was issued on October 4, 2006. Giroux did not make his first court appearance on the federal charge until February 28, 2007. Even if Giroux had a Sixth Amendment right to counsel on the State of Maine probation violation charge at the time he made the statements in question,[2] his contention fails because the Sixth Amendment right to counsel is "offense-specific," and the statements are now sought to be used not in the state probation revocation hearing for which the warrant was obtained, but in a new federal prosecution on a felon in possession of ammunition charge that was not yet charged at the time of the statements. See, Texas

---

[2] Giroux contends that his right to counsel under the Sixth Amendment had attached at the time the statements in question were made, because a probation revocation warrant had already been issued. The government's response is that Giroux has not established that a Sixth Amendment right to counsel had attached at the time the undercover probation officers met with him on September 26. The First Circuit Court of Appeals has recently ruled that a violation of supervised release is not a "criminal offense" but rather a violation that may result in an increase in a sentence. United States v. Smith, ___F.3d ___, No. 07-1246, 2007 WL 2367795, *4, 2007 U.S. App. LEXIS 19819, *11-13 (1st Cir. Aug. 21, 2007); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (probation revocation like parole revocation is not a stage of a criminal prosecution). Giroux had not yet appeared in court for even his initial appearance on the state probation revocation matter in any event and, although the State of Maine provides court-appointed counsel for probation revocation proceedings, the record is devoid of any evidence that counsel had been assigned to Giroux at the time of the statements.

v. Cobb, 532 U.S. 162, 168 (2001) ("[A] defendant's statements regarding offenses for which he had not been charged [are] admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses."); see also, Maine v. Moulton, 474 U.S. 159, 180, n. 16 (1985) (dictum) ("[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities."); United States v. Shea, 211 F.3d 658, 667 (1st Cir. 2000) (no Sixth Amendment violation when undercover government informant questioned Shea defendant about a bank robbery while he was incarcerated for earlier attempted bank robbery, because defendant Shea had not yet been charged with second robbery).

Giroux's reliance on United States v. Bender, 221 F.3d 265, 268-69 (1st Cir. 2000), does not move his argument forward. Although the conversation with the police undercover agent in Bender's case did involve other charges and events than the pending case for which counsel had been appointed, the point of the case was that the Government was prevented from using the statements as incriminating statements in the then pending case for which counsel had been appointed. The case simply reiterates the point that the Sixth Amendment right is offense specific and must be evaluated in light of the context in which the statements were made.

**B.     Fifth Amendment**

Giroux also claims that his Fifth Amendment right against self- incrimination was violated because P.O. Day's conduct rendered his statements involuntary and therefore subject to suppression. Giroux claims the statements were rendered involuntary, not

because of any threats or promises made to him, but "rather by the enticing nature of a promise to buy land for purposes of hunting" and "by officers who knew that the Defendant had been under the continuing care of a psychiatrist, that he had persistent delusions regarding money owed to him, and may have played on this particular psychological weakness by posing as purchasers of this parcel of property." (Mot. to Suppress a 4-5.)  Giroux's theory does not hold water in light of the evidence presented at the hearing on the motion.

The burden is on the government to prove that the defendant's statements were voluntary by a preponderance of the evidence.  Lego v. Twomey, 404 U.S. 477, 489 (1972).  The government must show that, based on the totality of the circumstances, the investigating agents neither "broke" nor overbore the defendant's will, Chambers v. Florida, 309 U.S. 227, 240 (1940), and that his statements were "the product of a rational intellect and a free will," Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  See also Lynumn v. Illinois, 372 U.S. 528, 534 (1963).  As this language suggests, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'."  Colorado v. Connelly, 479 U.S. 157, 167 (1986).  Coercive police activity may include either the creation of a susceptible psychological state in the person interrogated, Townsend v. Sain, 372 U.S. 293, 307-308 (1963) (concerning alleged administration of "truth serum" to quell heroin addict's withdrawal symptoms), or the exploitation of an existing psychological condition, Blackburn, 361 U.S. at 207-208 ("[A] most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane.")  The First Circuit has noted that because a suspect is in a weakened condition because of his heroin withdrawal symptoms, it does not necessarily

6

follow that his post-arrest statements are involuntary.  United States v. Palmer, 203 F.3d 55, 61-62 (1st Cir. 2000) ("In the context of the voluntariness of a confession, a defendant's mental state by itself and apart from its relation to official coercion never disposes of the inquiry into constitutional voluntariness.").

In the context of the present case there are neither unsavory threats by the officers nor a hint of chemical substances being involved in the situation.  Whatever psychological disorders Giroux may suffer from, he certainly does not present himself as an "insane" individual being wrongfully exploited by the police into making an involuntary confession to a crime.  Giroux's mental state at the time he made the statements, whatever it may then have been, does not dispose of the issue of constitutional voluntariness.  The fact of the matter is that the officers did nothing other than pose as prospective purchasers of the land, individuals invited onto the premises by Giroux.  In these circumstances there is no constitutional infirmity in the resulting voluntary statements made by Giroux.

## Conclusion

Based upon the foregoing I recommend the court adopt these proposed findings of fact and deny the motion to suppress.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

October 17, 2007

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge