UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Crim. No. 7-42-B-W |
| | ) |
| LEONARD FRANCIS GIROUX, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDED DECISION ON SECOND MOTION TO SUPPRESS[1]**

Defendant has moved for an order suppressing ammunition seized by State of Maine Probation Officers in the search of Defendant's residence on September 26, 2006, on the basis that the seizure violated the Fourth Amendment. Defendant contends that Probation Officer Magnusson did not have a reasonable basis to believe that the ammunition was either contraband or evidence of a crime, that Officer Magnusson seized the ammunition due to a mistake of law, rather than a mistake of fact, and that therefore the ammunition could not be seized under the plain view doctrine. I now recommend the court adopt these proposed findings of fact and deny the motion.

**Proposed Findings of Fact**

State of Maine Probation and Parole Officer Matthew Magnusson supervised Leonard Giroux, who had been most recently convicted of Burglary to a Motor Vehicle (Class C) and Forgery (Class D) in violation of 17-A MRSA §§ 405 and 703(1)(A) in

---

[1] I issued an Order in Respect to Discovery (Doc. No. 24) on July 24, 2007, setting a deadline of August 7, 2007, for the filing of motions. The Government has not raised an issue regarding the timeliness of this motion and the District Court Judge referred the matter to me for a recommended decision, so I am addressing the motion on its merits. Counsel for the defendant has indicated that a second evidentiary hearing is not required. However, I expect that motions are to be filed in accordance with the deadlines set forth in the Discovery Order, absent extenuating circumstances. I seriously question whether this motion presents any such extenuating circumstances.

State of Maine Superior Court, Penobscot County, docket number CR 2004-860, on or about February 11, 2005.  Giroux had been sentenced to 3 years, all but 1 year suspended, and 2 years probation. Defendant Giroux's State of Maine Conditions of Probation included the following conditions, among others,:

    1.    refrain from all criminal conduct and violation of federal, state and local laws.

    2.    report to the probation officer immediately and thereafter as directed and within 48 hours of his release from jail.

    3.    answer all reasonable questions by the probation officer and permit the officer to visit him at his home, place of work or elsewhere.

    . . . .

    10.    not own, possess or use any firearm or dangerous weapon if he had been convicted of a crime in any jurisdiction with a potential penalty of one year or more or any crime involving domestic violence or the use of a firearm or dangerous weapon.

    . . . .

    [13.]    submit to random search and testing for alcohol at the direction of a probation or law enforcement officer.

    [14.]    submit to random search and testing for drugs at the direction of a probation or law enforcement officer.

(Doc. No. 45, Ex. B).

Magnusson had meetings with Giroux between December 2005 and May 20, 2006.  During one of these meetings, Giroux told Magnusson that he had some archery equipment and a can of ammunition.  Magnusson told Giroux that he could not possess the items and Magnusson told Giroux to discard them.  Giroux stated he would do so.

Leonard Giroux failed to abide by his state probation conditions and failed to report as scheduled to Maine Probation and Parole, and a State of Maine probation

violation arrest warrant was sought by Magnusson on September 7, 2006, based on Giroux's failure to report and a change of address without notification. The warrant was obtained at some point between that date and when Magnusson confirmed the existence of the arrest warrant on September 18, 2006.

In his attempts to find Giroux, Magnusson tried on numerous dates to contact him by phone, mail and personal visits. During a visit on August 16, 2006, Magnusson noticed a "For Sale by Owner" sign on Giroux's last known residence. On September 24, 2006, an undercover call was placed to Giroux's number and a voice-mail message was left pretending interest in the real estate. On September 25, 2006, Giroux returned the call and arrangements were made to meet him on his property on September 26 at 10:00 a.m.

On September 26, 2006, state probation officers, acting in an undercover capacity, met with Giroux at his residence in Corinth. The officers posed as hunters who wanted to buy Giroux's property. Giroux told an officer during this meeting that he liked to shoot in the yard, that his neighbors sometimes hear him shooting firearms and that he usually shoots 9mm ammunition or .22 cal. ammunition. At the conclusion of the undercover meeting, the probation officers arrested Giroux for state probation violations on the outstanding probation violation arrest warrant. Following Giroux's arrest, the officers prepared to search Giroux's residence for prohibited items, drugs and alcohol, as listed in his probation conditions. Prior to the search, Magnusson asked Giroux if he had any items in the house which were in violation of his probation conditions. Giroux stated he still had the ammunition can that he had previously reported. Officers searched Giroux's residence and seized, from the loft above the kitchen, a military style metal ammunition

can containing several boxes of ammunition. The can and ammunition form the basis for the instant federal indictment.

The ammunition which forms the basis for the instant federal indictment (16 rounds of Winchester 12 gauge shotgun shells, 150 rounds of Remington .22 Winchester Magnum ammunition and 1 round of Winchester .44 Remington Magnum ammunition) is not the same as the ammunition that had been sought in a search warrant that authorized a search of Giroux's residence by the Piscataquis County Sheriff's Office. That search warrant (See Doc. No. 45, Exhibit A) was not for the ammunition that Magnusson had earlier told Defendant to get rid of but was for evidence in the form of 4 specific firearms and ammunition including a box of Remington 6 mm 100 grain ammo with an Old Town Trading Post sticker, a box of Remington 410 shotgun shells and a box of Winchester 22 LR ammo, all of which were suspected of having been stolen by Leonard Giroux in a burglary of a residence in Orneville, Maine, on August 19-20, 2006.

Title 18 U.S.C. § 922(g)(1) makes it unlawful for any person convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess in or affecting commerce any ammunition; or to receive any ammunition which has been shipped or transported in interstate or foreign commerce. Sufficient evidence was not produced to the district court judge during the state probation revocation hearing to establish the interstate nexus that is a necessary element of the federal charge, but that does not mean that Giroux's possession of the ammunition was not in violation of federal law. Such a violation of federal law would be a clear violation of Giroux's state probation terms. While it is true that the district court judge did not find Defendant's possession to be a violation, it was only because the state prosecutor did not introduce

evidence that the ammunition had an interstate nexus and thus violated federal law. (Tr. of Prob. Rev. Hr'g at 72-73, Doc. No. 45, Ex. C.)

Giroux was alerted to the fact that possession of the can of ammunition was not lawful because Magnusson had instructed him that he could not have bullets, firearms or dangerous weapons in his possession. He knew he needed to get rid of the ammunition he told Magnusson he had. Subsequently, Giroux told Magnusson on May 25, 2006, that he had cleaned his home and there was nothing there that he was not supposed to have. On September 26, 2006, when he was arrested on a state probation violation arrest warrant and asked whether he had any prohibited items in his house, Giroux responded that he still had the can of ammunition he had mentioned to Magnusson in a previous meeting. Giroux admits that the officers were legally present at his residence and concedes the applicability of the plain view doctrine in this warrantless search of probationer's residence, *if* Magnusson had a basis to reasonably suspect the ammunition was evidence of criminal conduct. (Def.'s Mot. at 3-4.)

## Discussion

Giroux contends that his possession of the can of ammunition seized by the Maine Probation Officers, which now forms the basis for the instant federal indictment, was not a violation of the terms of his state probation because a Maine state judge did not find it to be a violation. (Id. at p. 3, ¶ 8.) I do not accept the logic of this argument as leading to the conclusion that the evidence should be suppressed. The judge made it clear that his findings were based upon the State's failure to present any evidence of the interstate nexus relating to this ammunition. He clearly indicated that if the State had established by a preponderance of the evidence that Giroux violated federal law, then it would have

5

also been a violation of his state probation. (Tr. at 69: "I mean, I would have to find—I would have to look at that law and see whether if the Court finds that he did possess it . . . that that in and of itself represents a violation of this federal statute.") The judge ultimately concluded that although the State had shown possession of ammunition, it had not proven the interstate nexus and thus failed to prove a violation of federal law. (Id. at 72). The state court judge's findings do not advance a motion to suppress evidence in this court.

  Giroux also argues that Magnusson's "mistake of law," allegedly made at the time of the seizure, provides the basis for suppression of this evidence. No later than May 2006 Giroux understood from Magnusson that he was not allowed to possess ammunition. That instruction was given to him long before the burglary that gave rise to the probable cause to search his residence for ammunition. Magnusson's reason for issuing the edict regarding ammunition is not clearly developed on the existing record, but assuming that Magnusson mistakenly thought that possessing ammunition was akin to possessing a "dangerous weapon" under the state probation conditions, and not an independent violation of federal law, there was certainly nothing inherently unreasonable about his belief. This case is not at all akin to United States v. Blom, 242 F.3d 799 (8th Cir. 2001), where the court in *dicta* expressed concern that the officers who actually seized the ammunition did so without any knowledge at all that Blom was a convicted felon. The Blom court noted that a state police officer who knew that Blom was a convicted felon "would surely know that possession of ammunition is 'linked' to the state law crime of possessing a firearm." Id. at 808. The court rejected, again in *dicta*, the notion that an officer could seize a citizen's firearms or ammunition with no knowledge

6

of that citizen's criminal history and then attempt to justify the seizure because, in hindsight, it turns out the citizen is a convicted felon. Such a seizure, in the Eighth Circuit's view, would be entirely unreasonable.

Magnusson knew that Giroux was a convicted felon who should not be in possession of ammunition, the essential fact that forms the reasonable basis for the seizure. Magnusson's "mistake of law," if indeed he made such a mistake, was not that he based his probable cause upon conduct that was entirely lawful. See, e.g., United States v. McDonald, 453 F.3d 958 (7th Cir. 2006) (holding that a mistaken belief that conduct is unlawful cannot support a reasonable suspicion or probable case determination, no matter how reasonable the mistaken understanding of the law is). Magnusson's "mistake" was that he presumed the possession of the ammunition was a violation of state probation conditions because it was linked to possession of dangerous weapons, rather than because it was a separate violation of federal law. Properly proven up in court, possession of ammunition by a felon is a violation of federal law and thus a violation of state probation conditions. Magnusson's seizure of the ammunition identified to him by Giroux was entirely reasonable under the circumstances and did not violate the Fourth Amendment.

## Conclusion

Based upon the foregoing, I RECOMMEND the court adopt these proposed findings of fact and DENY the motion to suppress.

NOTICE

A party may file objections to those specified portions of a
magistrate judge's report or proposed findings or recommended decisions

entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 5, 2007